IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CASE NO. 4:12-mj-275 |
| | : | |
| DAVID L. GERMAN, JR., | : | |
| | : | |
| Defendant. | : | |

_____

**O R D E R**

Presently pending before the Court are Defendant's Supplemented Motion Pursuant to *Brady v. Maryland* for the Production of Intoxilyzer Review Data and Reports (ECF No. 32), non-party CMI, Inc.'s Motion to Quash Subpoena (ECF No. 34), and non-parties Georgia Institute of Technology and Andre Howard's Motion to Quash (ECF No. 38). For the reasons explained below, Defendant's motion is denied and CMI and Georgia Tech's motions are granted.

**DISCUSSION**

**I.     Defendant's Supplemental Motion to Produce**

On September 15, 2013, Defendant filed a supplemental motion to produce seeking "all reports and data—final and preliminary—regarding the source code review of the Intoxilyzer conducted by the Georgia Tech Research Institute." (Def.'s Supplemental Mot. to Produce 2.) The Government responds that the information sought by Defendant is not relevant and that it does not have the information requested in its possession or control. (Gov't's Resp. to Def.'s Mot. 2, ECF No. 33.) Defendant replies

that the State of Georgia and Georgia Tech have information in their possession that may be exculpatory in nature. (Def.'s Reply 3, ECF No. 36.)

Defendant, however, has not established that the government here, namely the United States Government, has any of the requested information in its possession. *See, e.g.,* Fed. R. Crim. P. 16(a)(1)(E) (requiring government disclosure of documents and objects "within the government's possession, custody, or control[.]"); *United States v. Luis-Gonzalez*, 719 F.2d 1539, 1548 ("While *Brady* requires the government to tender to the defense all exculpatory evidence in its possession, it establishes no obligation on the government to *seek out* such evidence." (internal quotation marks and citation omitted) (emphasis in original)). To the contrary, the Government made the unrebutted assertion that it does not and has not ever had in its possession or control any of the documents or information requested by Defendant. The federal government is not obligated to seek information in the custody of a state government for purposes of production to the Defendant. *See United States v. Brazel*, 102 F.3d 1120, 1150 (11th Cir. 1997) (explaining that within the possession of the government does not include the state court or state law enforcement). Defendant's supplemental motion to produce is consequently denied.

## II.   CMI's Motion to Quash

Non-party CMI moves to quash a subpoena which requires CMI to bring to court, *inter alia*, the digital version of the Intoxilyzer 5000 source code, all tools required for the evaluation of the source code, and the manufacturers' software and specifications for the Intoxilyzer 5000. (CMI's Mot. to Quash Ex. A, ECF No. 34-1.) CMI moves to quash

2

under Federal Rules of Criminal Procedure Rule 17(c)(2) claiming that the subpoena is unreasonable and oppressive. Furthermore, CMI contends that the subpoena should be quashed because this Court previously denied production of the documents and evidence Defendant again seeks. Defendant contends that there can be no question that the requested information is relevant and admissible and, as such, CMI's motion should be denied.

In making this argument, Defendant ignores the Court's previous rulings on his motions to produce. Specifically the Court found in its June 17, 2013, Order that the Defendant had "failed to establish that he is constitutionally entitled to the material sought to be produced by CMI or that any such disclosure is likely to produce relevant information." (Order 2, ECF No. 26.) Despite the Court's denial of the motions to produce, CMI agreed to allow Defendant to inspect and test the Intoxilyzer 5000 source code at CMI in Kentucky if Defendant agreed to a protective order. Defendant declined to pursue this option and instead, on the eve of trial, seeks to have CMI bring the source code to court so that it can be tested during the trial.[1] The materials previously sought from CMI by Defendant's motions to produce (ECF No. 8) and subpoena (ECF No. 13) are almost, if not, identical to the information sought to be produced in the current subpoena duces tecum.

The Supreme Court has explained that in order to be entitled to a subpoena duces tecum, a movant must establish:

---

[1] Defendant states that he did not go to Kentucky to evaluate the source code because he was unable financially. However, Defendant did not seek leave under 18 U.S.C. § 3006A(e) or *Ake v. Oklahoma*, 470 U.S. 68 (1985) for assistance in payment for this testing.

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general fishing expedition.

*United States v. Nixon*, 418 U.S. 683, 699-700 (1974) (internal quotation marks and citation omitted); *see also, e.g., United States v. Moore*, 484 F. App'x 758, 765-66 (4th Cir. 2012).  In other words, a movant must establish "(1) relevancy; (2) admissibility; [and] (3) specificity."  *Nixon*, 418 U.S. at 700.  Defendant failed to establish that this subpoena on CMI is anything more than a fishing expedition for information and materials of doubtful and speculative admissibility that could have been procured prior to trial.  Thus, CMI's motion to quash the subpoena duces tecum is granted.[2]

### III.  Georgia Tech and Andrew Howard's Motion to Quash

Like CMI, Georgia Tech and Andrew Howard move to quash subpoenas served on them by Defendant.  (Non-party Mot. to Quash Exs. D, E, ECF No. 38.)  Specifically, Defendant seeks to have Mr. Andrew Howard from the Georgia Tech Research Institute appear to testify to and bring with him "all documents, emails, reports, preliminary reports, and other writings in electronic or other form . . . regarding analyses of Intoxilyzer machines produced by CMI, Inc." and "a laptop computer with all programs necessary to engage in an analysis of the Intoxilyzer source code."  (*Id.*)  Georgia Tech claims that the subpoenas are unreasonable and oppressive under Federal Rules of

---

[2] The Court notes, as was discussed at the hearing held on September 19, 2013, that the Court is not limiting Defendant's right to subpoena a person from CMI with relevant knowledge to testify at his trial.

4

Criminal Procedure Rule 17(c)(2) because the subpoena seeks information that is irrelevant, not subject to production, and of which Georgia Tech has no specific knowledge.

To support its assertion that the subpoenas should be quashed, Georgia Tech has attached an affidavit from the subpoenaed individual and testimony from that individual in a state action. (*Id.* at Exs. A, B, ECF No. 38.) Mr. Howard admits that the Georgia Tech Research Institute (GTRI) has contracted to conduct testing on the Intoxilyzer 9000, but states that it has "not been retained to do any research regarding the Intoxilyzer 5000." (Howard Aff. ¶ 8, Sept. 3, 2013.) Further, he avers that GTRI has "done no original research or comparative analysis regarding the Intoxilyzer 5000[,]" and that "[n]o one at Georgia Tech or GTRI possesses copies of the source code or any other similar data for the Intoxilyzer 5000, or for any specific Intoxilyzer 5000 machine." (Howard Aff. ¶¶ 8-9.) It is clear from this evidence that the subpoenaed person and information would concern only the Intoxilyzer 9000 and not the Intoxilyzer 5000, which was used to test Defendant in this case. Consequently, any testimony by Mr. Howard and the requested documents are irrelevant to Defendant's case.

Defendant argues that information about the Intoxilyzer 9000 may be relevant because it is possible that the Intoxilyzer 5000 source code was used as a base for or otherwise used in some way to create the Intoxilyzer 9000 source code. Defendant, however, has no evidence to support this speculative statement. Instead, Defendant cites to the Court's statement during the March 20, 2013, hearing wherein the Court and Defendant's counsel, Mr. Sessions had the following discussion:

>Mr. Sessions: Your Honor, [CMI has] two series of machines that are supposedly more advanced than [the Intoxilyzer 5000]. They no longer even sell the machine. This notion that it's their most valuable intellectual property is defied by even the progress within the owned [sic] company in and of itself.
>
>The Court: But does the core R&D continue into the later models? I mean, if the core R&D continues into the later models, their argument has weight.
>
>Mr. Sessions: And, Your Honor, that's exactly my problem. I have specifically asked for change logs in the source code.

(Mot. Hr'g Tr. 50:8-18, Mar. 20, 2013, ECF No. 35.) The Court's questioning is not evidence to support any contention that the source code in the Intoxilyzer 9000 is or is not similar to the source code in the Intoxilyzer 5000. CMI made no representations at the hearing regarding whether the source codes are in any way similar or related.[3] Thus, this argument is meritless and any testimony or documents regarding the Intoxilyzer 9000 and its source code are irrelevant to this action.

Defendant also argues that Mr. Howard should be allowed to testify in this action because he stated at a previous state court hearing:

>[A]ll that was suggested to me without specifics was that there may have been some concerns with the 5000 related to source code and how values were—and how readings from the device were handled. I was not given any specifics like I don't know what those problems were and that's all I know.

---

[3] The Court notes that in Georgia state court proceedings, it has been represented by counsel unrelated to this litigation that CMI's attorney, Mr. Custer, stated in the March 20 hearing that "the entire basis and foundation of the Intoxilyzer 9000 was the exact same software of the Intoxilyzer 5000." *Georgia v. Hopek*, Case No. 2012-D-01831-2, Mot. Hr'g Tr. 5:8-10 (St. Ct. of Gwinnett Cnty. Aug. 23, 2013) (Non-party Mot. to Quash Ex. B, ECF No. 38). This is an inaccurate reflection of the conversation between the Court and counsel at the March 20 hearing.

*Georgia v. Hopek*, Case No. 2012-D-01831-2, Mot. Hr'g Tr. 28:2-7 (St. Ct. of Gwinnett Cnty. Aug. 23, 2013). Defendant claims that he needs to be able to call Mr. Howard to testify to find out, for example, who made the suggestion to Mr. Howard that there may be a problem with the Intoxilyzer 5000. That question was previously asked of Mr. Howard and is available in the transcript of the state court motions hearing. Mr. Howard's statement, which Defendant admits is pure hearsay, does not establish that Mr. Howard has any information relevant to or potentially admissible in this case.

In sum, the Georgia Tech witness and documents subpoenaed by Defendant only have information related to the Intoxilyzer 9000. The Intoxilyzer 9000 is not currently used by the Government at Fort Benning and was not used to get an alcohol breath sample in this case. Consequently any testimony regarding the Intoxilyzer 9000 is irrelevant and inadmissible. Georgia Tech's motion to quash is hereby granted.

## CONCLUSION

For the foregoing reasons, Defendant's Supplemented Motion Pursuant to *Brady v. Maryland* for the Production of Intoxilyzer Review Data and Reports (ECF No. 32) is denied. Non-party CMI, Inc's Motion to Quash Subpoena (ECF No. 34) and non-parties Georgia Institute of Technology and Andre Howard's Motion to Quash (ECF No. 38) are granted.

SO ORDERED, this 23rd day of September, 2013.

S/ Stephen Hyles<br>UNITED STATES MAGISTRATE JUDGE